United States District Court
Southern District of Texas
**ENTERED**
November 23, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BANDALI DAHDAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1712 |
| | § | |
| BASIMA ZABANEH, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant's Motion to Dismiss for Failure to State a Claim. The court has considered the motion, Plaintiff's opposition brief, Defendant's reply, Plaintiff's surreply, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**.

## I. Case Background

Plaintiff, pro se, filed this tort action against his sister for her part in denying him inheritance after the deaths of their parents.

### A. Factual Background[2]

As the court understands Plaintiff's allegations, Plaintiff was misled by his youngest sister, Defendant Basima Zabaneh ("Defendant"), about his right to inheritance at the time of each

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 13.

[2] The factual background is taken entirely from Plaintiff's complaint. See Doc. 1, Pl.'s Compl. for Fraud & Deceit, Negligent Misrepresentation, Constructive Trust/Unjust Enrichment, & Conversion.

of his parents' deaths. Plaintiff and Defendant's mother, who was a resident of Amman, in the Hashemite Kingdom of Jordan ("Jordan"), died intestate in June 2000 in London, England. His father died nearly seven years later, in April 2007, in Amman. Plaintiff and Defendant have two sisters, Julietta Khoury ("Julietta") and Sophie Dahdah ("Sophie").

The parents' assets were split after the father's death. Pursuant to the rules and regulations of the Greek Orthodox church, the distribution of their assets was subject to Sharia law. As such, the mother's assets should have been split first at the time of her death and then the assets should have been split again at the time of the father's death. Plaintiff believes that he should have received three-tenths of his mother's estate, which would have amounted to about $115,000.

Plaintiff also believes that his father's bank account was divided in a manner contrary to Jordanian law. Shortly after the father's death, "Defendant encouraged Plaintiff to sign over church documents giving up all his rights to any inheritance, without the benefit of review by a legal professional."[3] In exchange for signing the documents, Defendant "reassured Plaintiff" that Plaintiff would be "rewarded by the construction of a swimming pool" at his residence in Massachusetts, a promise Defendant had

---

[3]   Id. p. 3; see also id. p. 8.

made prior to their father's death.[4]  Defendant said that "she would make sure that another sister would pay for a construction of a swimming pool."[5]  Plaintiff spent more than $220,000 on the construction of the pool, but "Defendant's sister reneged on payments for the pool."[6]

In November 2007, Plaintiff and two of his sisters signed an agreement to settle the inheritance from both parents.  The agreement was that Plaintiff, Defendant, and Julietta gave all the inheritance, including the house, to Sophie "in return for settlement."[7]  At the time of the execution of the agreement, Plaintiff did not have an attorney and was not given an opportunity to hire one.  Defendant had hired an attorney experienced in relevant matters who made "false, misleading, and fraudulent statements" to the effect "that Plaintiff was not entitled to any inheritance from his mother."[8]

> Unbeknownst to Plaintiff and only discovered in March 2015 thru research that Plaintiff discovered thru a Jordanian attorney, Defendant had actually in May 2007 purchased from Defendant's sister the rights to the house along with another sister.  So the entire November 2007 agreement was a fraud as two of my sisters had already owned the house as of May 2007 and I was never made aware of it, and the agreement in November 2007 is that even

---

[4]   Id. p. 3; see also id. pp. 4, 8.

[5]   Id. p. 8.

[6]   Id. pp. 8-9.

[7]   Id. p. 4.

[8]   Id.

3

the sisters that owned the house had agreed to give the inheritance including the house to another sister. Defendant knew full well at the time she signed the agreement in November 2007 that she was not giving up the rights to the house to my other sister. This was only discovered upon a search on land court records in Amman in March 2015 by my Jordanian attorney.[9]

**B.  Procedural Background**

On June 15, 2015, Plaintiff filed this lawsuit, alleging four causes of action: (1) constructive trust/unjust enrichment based on Defendant's retention of Plaintiff's share of the inheritance; (2) conversion based on Defendant's failure to give Plaintiff his share of the inheritance; (3) fraud and deceit based on the actions taken by Defendant, her attorney, and Plaintiff's other sisters in April, May, and November 2007; and (4) negligent misrepresentation based on Defendant's broken promise of payment for the construction of a pool.[10]

On June 25, 2015, the U.S. Marshals Service served Defendant via certified mail.[11] On July 16, 2015, Defendant filed a combined answer and motion to dismiss.[12] In her answer, Defendant raised the defenses of statute of frauds, statute of limitations, release, accord and satisfaction, failure to mitigate damages, and failure

---

[9]   Id. pp. 4-5.

[10]  See id. pp. 5-12.

[11]  See Doc. 7, Return of Service.

[12]  See Docs. 8 & 9, Duplicate Filings of Def.'s Combined Answer & Mot. to Dismiss ("Answer & Mot. to Dismiss").

to satisfy legal prerequisites to this lawsuit.[13] On July 17, 2015, Plaintiff responded to Defendant's motion.[14] Thereafter, Defendant filed a reply, and Plaintiff filed a surreply.[15]

## II. Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic

---

[13] See Docs. 8 & 9, Answer & Mot. to Dismiss p. 8.

[14] See Doc. 10, Pl.'s Opp'n to Def.'s Mot. to Dismiss.

[15] See Doc. 11, Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"); Doc. 16, Pl.'s Surreply to Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Surreply").

recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Analysis

Defendant's motion to dismiss is based entirely on the argument that the statute of limitations for each cause of action pled has expired, and, thus, the entire lawsuit is barred. The longest limitations period for any of the causes of action asserted in Plaintiff's complaint is four years. See Tex. Civ. Prac. & Rem. Code §§ 16.003, 16.004; Newby v. Enron Corp., 542 F.3d 463, 468 (5th Cir. 2008)(applying Texas law); Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 410 (5th Cir. 2004).[16] Clearly, all of acts and omissions about which Plaintiff complains occurred in 2007 or before, far more than four years prior to the filing of this lawsuit. The statutes of limitations at issue here have all expired unless either the date of accrual was delayed or a tolling doctrine extended the limitation periods. Plaintiff does not contest the length of the applicable statutes of limitation but, rather, argues for delaying accrual. He asserts that the limitations period began to run in March 2015.

Under Texas law, a cause of action typically accrues and the

---

[16] The parties have cited the court to Texas statutes and cases as the applicable law. Therefore, the court assumes, without deciding, that Texas law applies to the pending motion.

statute of limitations starts to run when the defendant's illegal act causes injury regardless of when the injury is discovered or whether all resulting damages have occurred. Vanderbilt Mortg. & Fin., Inc. v. Flores, 692 F.3d 358, 366 (5th Cir. 2012)(quoting Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 221 (Tex. 2003)); S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). The accrual of a cause of action is a question of law. Vanderbilt Mortg. & Fin., Inc., 692 F.3d at 366 (quoting Knott, 128 S.W.3d at 221). Statutes of limitations set a reasonable amount of time after accrual of a claim during which a party is compelled to bring an action to prevent, among other things, loss of evidence and death or disappearance of witnesses. Mooney v. Harlin, 622 S.W.2d 83, 84 (Tex. 1981); see also Little v. Smith, 943 S.W.2d 414, 417 (Tex. 1997). Even meritorious claims may be lost when brought after the expiration of the limitations period. See S.V., 933 S.W.2d at 6.

The discovery rule applies to defer the accrual of a cause of action when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." Vanderbilt Mortg. & Fin., Inc., 692 F.3d at 366 (quoting BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 65-66 (Tex. 2011)). If, however, the injury is of the type "that could be discovered through the exercise of reasonable diligence," it is not inherently undiscoverable. Id. (quoting BP Am. Prod. Co., 342 S.W.3d at 66). When the wrong and the harm are unknown to a

plaintiff because of "their very nature and not because of any fault of the plaintiff," accrual may be delayed. S.V., 933 S.W.2d at 7. The discovery rule is "a very limited exception to statutes of limitations." Vanderbilt Mortg. & Fin., Inc., 692 F.3d at 366 (quoting BP Am. Prod. Co., 342 S.W.3d at 66). To succeed on summary judgment, the defendant must prove when the plaintiff knew or should have known of his injury. S.V., 933 S.W.2d at 4 (citing Weaver v. Witt, 561 S.W.2d 792, 794 (Tex. 1977)).

Another recognized reason for deferring the accrual of a cause of action is fraudulent concealment. S.V., 933 S.W.2d at 4. "A person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." Id. at 6. As with the discovery rule, accrual occurs when the fraud is discovered or should have been discovered through reasonable diligence. Mooney, 622 S.W.2d at 85. "When evidence of fraud may be disclosed by examination of public records[,] . . . limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence." Id. To survive summary judgment, the plaintiff must prove fraudulent concealment. S.V., 933 S.W.2d at 4 (citing Weaver, 561 S.W.2d at 793-94).

By Plaintiff's account in this case, his suspicion of wrongful distribution of his parents' estates was not aroused "until a case of inheritance fraud was brought against Defendant's sister's

husband in 2014 in the United Kingdom."[17] That case had absolutely nothing to do with Plaintiff's parents' estate distribution but allegedly prompted Plaintiff to look into his own inheritance.[18] Plaintiff, who does not read or write Arabic, thereafter hired a Jordanian attorney who discovered a sale agreement by which Sophie transferred the house back to Defendant and Julietta. Plaintiff's attorney confirmed that Defendant was a part owner of the house. Upon further investigation, Plaintiff learned about Jordanian inheritance law, which led him to believe that his parents' estates had not been settled properly.

Plaintiff contends that the discovery rule or fraudulent concealment applies to delay the start of the statutes of limitation until March 2015 when Plaintiff learned about Jordanian inheritance law. Plaintiff claims that he did not know that he had incurred damages until he knew about the applicable law. Plaintiff argues that he was justified in trusting misinformation provided to him by Defendant's attorney at the time of the settlement of the father's estate and that Plaintiff had no reason to believe any document unknown to him had been filed in the church records.

Pursuant to the discovery rule, the question is when did Plaintiff acquire knowledge of facts that would have prompted a reasonable person to investigate his legal rights. Kona Tech.

---

[17]   Doc. 10, Pl.'s Opp'n to Def.'s Mot. to Dismiss p. 8.

[18]   See Sabbagh v. Khoury [2014] EWHC (QB) 3233 (Comm) www.bailii.org/ew/cases/EWHC/Comm/2014/ 3233.html (Eng.).

Corp. v. S. Pac. Transp., 225 F.3d 595, 607 (5th Cir. 2000). Plaintiff's claims of constructive trust/unjust enrichment and conversion relate directly to the distribution of his parents' estates. Plaintiff's fraud-and-deceit claim is based on representations made during the estate distribution, and Plaintiff's negligent-misrepresentation claim is based on Defendant's contemporaneous promise to Plaintiff that Sophie would pay Plaintiff money for the construction of a pool at his home.

Militating against the deferred accrual of each of Plaintiff's probate-related claims until March 2015 is the legally recognized need for finality of probate proceedings. See Little, 943 S.W.2d at 417. The U.S. Supreme Court has recognized that a state has an "interest of considerable magnitude" in "the orderly disposition of decedents' estates" that "justif[ies] the enforcement of generally applicable limitations on the time and manner in which claims may be asserted." Id. (quoting Reed v. Campbell, 476 U.S. 852, 855 (1986)); Lalli v. Lalli, 439 U.S. 259, 268 (1978); see also Turner v. Nesby, 848 S.W.2d 872, 877 (Tex. App.—Austin 1993, no writ)("[T]he state's interest in finality of judgments distributing estates can constitute sufficient basis for barring claims," even meritorious ones).

Texas courts have shown respect for the finality of probate proceedings, refusing to defer accrual of claims arising therefrom in most instances, even amid allegations of fraudulent concealment.

Little, 943 S.W.2d at 420. An individual who has an interest in the probate of an estate has constructive notice of the probate proceedings and the contents of the resulting records. See id. at 420-21; Mooney, 622 S.W.2d at 85.

Granted, the probate proceedings about which Plaintiff complains were not finalized in Texas or any state in the United States. However, Jordan has no less interest in the finality of probate proceedings than does any state in the United States.

Plaintiff was present in Jordan for both of his parents' funerals, and he participated in the settling of his father's estate. Plaintiff had more than constructive knowledge of the probate proceedings; he had actual knowledge. He also had actual knowledge of how and where the estate settlement agreement was to be filed. Thus, Plaintiff had actual knowledge of the facts that underlay his claims based on the distribution of his parents' estates. The legal presumption accompanying knowledge of probate proceedings satisfies Defendant's burden of showing that Plaintiff should have known of his injury in 2007.

Furthermore, Plaintiff represents that a totally unrelated legal decision issued by a court in the United Kingdom approximately seven years after the settlement of his father's estate prompted him to question his own inheritance.[19] Although the

---

[19]    Plaintiff's sister's husband purportedly was a defendant in that case.

11

2014 case may have legitimately first stirred Plaintiff's suspicion,[20] that foreign decision does not justify Plaintiff's much-delayed decision to look into the settlement of his father's estate and does not mean that the alleged fraud was inherently undiscoverable prior to the unrelated 2014 lawsuit. Nor does his 2015 discovery of a May 2007 contract among his sisters regarding the ownership of the house. That agreement was filed with the church and was available to Plaintiff.[21] Therefore, Plaintiff is charged with knowledge of that agreement, which was executed six months prior to the agreement settling his father's estate. Plaintiff has failed to show that any fraudulent concealment on Defendant's part prevented Plaintiff's access to the facts relevant to his claims. The fact is, had Plaintiff examined the records and exercised reasonable diligence, he could have discovered the facts that underlay his fraud and deceit claim.

Plaintiff offers as excuses his reliance on false representations made by Defendant's attorney and his inability to

---

[20] Contrary evidence that Plaintiff submitted with his surreply suggests that Plaintiff's suspicions may have been aroused as early as November 2007. See Doc. 16, Ex. C to Pl.'s Surreply, Letter from Sophie to Plaintiff Dated Nov. 9, 2007. At that time, Sophie sent a letter in response to a series of emails from Plaintiff. See id. In that letter, Sophie explained various matters related to the probate proceedings, provided contact information for the court and the lawyer, shared information from the attorney, and listed assets. See id. A comment in her letter suggested Plaintiff's doubts: "I am calculating and dividing the assets as fairly and as equitably as possible; I resent the implication that I am trying to 'cheat' you, Julietta or [Defendant] out of any money." Id. p. 2 (unnumbered).

[21] Plaintiff argues that the filing date of the agreement is not known to him and, therefore, establishes a dispute of fact. Plaintiff cannot rely on speculation in the absence of evidence that the agreement was not filed at the time of its execution.

read or write Arabic.  Aside from the fact that any representations made by Defendant's attorney cannot be attributed to Defendant absent evidence of her sponsorship of the information, no evidence suggests that Defendant's attorney had a fiduciary duty to Plaintiff.  No doubt, it was convenient and less expensive to rely on Defendant's attorney.  However, it does not excuse Plaintiff's duty to exercise due diligence in seeking out relevant legal and factual information about his inheritance rights.[22]

Plaintiff's inability read or write Arabic provides, not an excuse, but even more support for the conclusion that he did not act as a reasonably diligent person would in researching his legal rights.  The information was not inherently undiscoverable simply because he needed a translator.  Moreover, an email exchange between Plaintiff and Mohammed Abu-Risha, which Plaintiff submitted with his surreply, evidences that Plaintiff did ask another person to translate, at the very least, the church decree in November 2007.[23]

Plaintiff made no inquiry about his legal right to inheritance at the time of his mother's death in 2000, his father's death in 2007, or for years after the final distribution of their assets.  A reasonably diligent heir would have researched his rights at the

---

[22] Plaintiff states that he was denied the opportunity to get his own attorney.  Without more details, the court finds that Plaintiff was not excused from his responsibility to exercise diligence in protecting his legal rights.

[23] See Doc. 16, Ex. B to Pl.'s Surreply, Email Thread Between Pl. & Mohammed Abu-Risha Dated Nov. 18-19, 2007.

time of the estate distribution. He cannot now sue for distribution deficiencies that he could have discovered within the limitations period if only he had exercised reasonable diligence in determining his legal rights.

Plaintiff failed to allege any facts that would support delaying accrual of his negligent misrepresentation claim. The essence of the claim is that Defendant promised Plaintiff, a week before their father's death, money to build a swimming pool and, after their father's death, reaffirmed that promise when asking Plaintiff to sign over his inheritance to Sophie. He never received any money for his pool. His injury was clearly discoverable when no payment was made within the limitations period, well before 2015. The discovery rule does not apply to this claim. Other than his assertion that Defendant negligently misrepresented that he would receive the pool money, Plaintiff alleges no statement that could have possibly fraudulent concealed his claim as alleged. Therefore, no deferral of accrual is warranted for his negligent misrepresentation claim.

For the above reasons, the court finds no justification for deferring accrual of Plaintiff's claims until March 2015. Defendant's motion to dismiss based on the expirations of the statutes of limitation should be granted.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's

motion to dismiss be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 23rd day of November, 2015.

_____
U.S. MAGISTRATE JUDGE